# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROGER N. LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-05-220-S |
| | ) |
| THE BOARD OF COUNTY | ) |
| COMMISSIONERS OF MUSKOGEE | ) |
| COUNTY, State of Oklahoma, | ) |
| CHARLES PEARSON, Muskogee | ) |
| County Sheriff, in his | ) |
| individual capacity, and JUSTIN | ) |
| HUTCHINSON, Muskogee County | ) |
| Under-Sheriff, in his individual | ) |
| capacity, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the court for its consideration is the defendant Board of County Commissioners of Muskogee County's Motion For Summary Judgment and the defendant Charles Pearson's Motion For Summary Judgement. The court rules as follows on the motion.

Plaintiff filed a 42 U.S.C. Sec. 1983 action against the Muskogee County Board of County Commissioners for deprivation of property rights regarding the benefits associated with enrollment in the State retirement system and the County's failure to make the required contributions into the system on plaintiff's behalf. Plaintiff has also alleged a cause of action against the Sheriff for a violation of plaintiff's First Amendment right to speech. Plaintiff alleges he was terminated for protesting a hostile and harassing work environment, and a schedule change which was announced after he decided to run for Sheriff in the 2004

1

election.

## Findings of Fact

The court finds the facts as follows. Plaintiff was first employed with the Muskogee County Sheriff's Department on September 15, 1997. On February 5, 2004, plaintiff had a phone conversation with Sheriff Pearson. At this time, plaintiff advised Sheriff Pearson he was running for Sheriff. Sheriff Pearson told him that he would not fire him for running for office. After plaintiff began to actively run for Sheriff he began to receive flyers in his office mailbox regarding the definition of loyalty. Sheriff Pearson did not distribute these flyers. Plaintiff visited with under-sheriff Hutchinson about these activities and enlisted his help to stop the behavior. On February 25, 2005, Sheriff Pearson through his staff circulated a memo throughout the Sheriff's office warning of disciplinary action for unauthorized notations on the assignment board. The memo also stated there would be disciplinary action for anyone caught placing unnecessary mail in any deputy's mail box. On March 15, 2004, plaintiff received notice that his work schedule would be changed to assist in transport and that he was being assigned to be a nursing home liaison. Plaintiff acknowledges that transport is an important function of the Sheriff's office. Further, nursing home investigations were a priority of his campaign. Plaintiff was not alone in shouldering the burden of transports, as two other officers' schedules were also changed to meet the needs of the Sheriff's office. On March 17, 2004, plaintiff met with Sheriff Pearson and Under-Sheriff Hutchinson about the harassment he was experiencing in the office. Plaintiff could not identify a specific individual who was harassing him. Plaintiff then discussed the new schedule change.

2

He told the Sheriff he refused to abide by it.  Plaintiff was terminated on this same day for refusing to abide by the new schedule.

After plaintiff was terminated he discovered that no contributions had been made on his behalf by Muskogee County to the Oklahoma Public Employees Retirement System ("Retirement Fund").  The Retirement Fund provides that a member is entitled to benefits when he or she has completed eight years of credited service at the date of his termination.  At the end of his employment, plaintiff had 7 years of service with the county.  He was neither previously nor was he subsequently employed by an agency which contributes to the Oklahoma Public Employees fund.

**STANDARDS OF SUMMARY JUDGMENT**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 ©; See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party has the burden of demonstrating the absence of a genuine issue of fact.  Celotex v. Catrett, 477 U.S. 317, 325 (1986).  If this initial burden is satisfied, the nonmoving party then has the burden of coming forward with specific facts showing there is a genuine issue for trial as to elements essential to the nonmoving party's case.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party cannot rest on the mere allegations of the

3

pleadings, but must go beyond the pleadings and "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it} carries the burden of proof." Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

"A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thomas v. IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Deepwater Invs. Ltd. v. Jackson Hole Ski Corp, 938 F.2d 1105, 1110 (10th Cir. 1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. With these standards in mind, the court turns to the merits of the defendants' motion.

## I.FIRST AMENDMENT CLAIM

Plaintiff alleges Sheriff Pearson retaliated against him in violation of the First Amendment for running for Sheriff of Muskogee County by altering his work schedule and duties, harassing and intimidating him and ultimately terminating his appointment as a deputy Sheriff. Plaintiff contends his running for Sheriff was protected political speech.

When the government is acting as an employer, it may constitutionally restrict the speech of its employees to a

4

greater degree than when it acts in its general capacity as the sovereign. The Supreme Court has stated:

> Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. When [an employee]...begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain [him]. However, the court must balance the employee's interest in expression and the public employer's interest in regulating its employee's speech to foster "efficiency of the public services it performs through its employees." Pickering v. Board of Education, 391 U.S. 563, 568 (1968).

To determine if defendants have violated plaintiff's First Amendment rights, this court must apply the Pickering test.

The Pickering test requires the court to determine as questions of law if the speech in question involves a matter of public concern and if so, the court must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace. The employee must show the speech was a substantial factor driving the challenged governmental action. If the employee succeeds on that point, the employer must show that it would have taken the same action against the employee even in the absence of the protected speech. Jantzen v. Hawkins, 188 F.3d 1247, 1257 (10th Cir. 1999).

This court must first determine if plaintiff's speech involved a matter of public concern. Matters of public concern are those "of interest to the community, whether for social, political or other reasons." Connick v. Myers, 461 U.S. 138, 146

(1983). Plaintiff was running for Sheriff of the county. The court finds the plaintiff was speaking on a matter of public concern since the election of a law enforcement official would be of interest to the community.

Next, the court must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace. "In balancing the employee's interest in expression against the government's interest in efficiency, a court must consider 'the manner, time, and place of the employee's expression' as well as the events leading up to it." Rankin v. McPherson, 483 U.S. 378, 388 (1987). The court finds the time, place and manner of plaintiff's speech was appropriate. In the case at bar, plaintiff simply announced his candidacy for Sheriff in the appropriate manner.

In the case at bar, plaintiff's speech caused actual disruptions in the work place. See Belcher v. City of McAlester, Oklahoma, 324 F.3d 1203, 1208-1209 (10th Cir. 2003). The government has a strong interest in maintaining employee harmony.

> ...the government needs to maintain 'discipline by superiors [and] harmony among co-workers' especially where 'close working relationships [exist] for which personal loyalty and confidence are necessary.' Rankin, 483 U.S. at 388, 107 S.Ct. at 2899. That need is particularly acute in the context of law enforcement, where there is a 'heightened interest...in maintaining discipline and harmony among employees,' Wulf, 883 F.2d at 861; *See also* Kelley v. Johnson, 425 U.S. 238, 246-47, 96 S.Ct. 1440, 1445, 47 L.Ed.2d 708 (1976)(recognizing the need to accord police departments wide latitude in decisions that impact 'discipline, esprit de corps, and uniformity'). Moore

<u>v. Wynnewood</u>, 57 F.3d 924, 934 (10th Cir. 1995).

The court has stated "Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest." <u>Rankin</u> at 388. The Tenth Circuit Court of Appeals has previously stated that confidence and loyalty are important in the functioning of a fire department. <u>Koch v. City of Hutchinson</u>, 847 F.2d 1436, 1452, n.22 (10th Cir. 1988). The facts of this case are undisputed. Once plaintiff announced that he was running for the office of Sheriff against the incumbent Sheriff Pearson, disruptions in the Sheriff's office began to occur. Employees of the Sheriff's office began to harass plaintiff. They gave plaintiff flyers defining "loyalty". They also wrote derogatory terms by his name on the schedule board. Further, it appears they failed to provide back up support to him at times. There is evidence that plaintiff's decision to run for Sheriff caused actual disruptions in the Sheriff's office. As the Tenth Circuit has previously noted it is important in the law enforcement setting that harmony, loyalty and confidence are present because of the nature of the job. Officers need to be able to trust and rely on one another. Thus, the county had a strong interest in implementing policies that protect personnel relationships and avoid interference with work. The court finds the defendants' interests in regulating plaintiff's speech were substantial in order to maintain harmony in the police department.

The court finds that the <u>Pickering</u> balance clearly tips in favor of defendants. Plaintiff has failed to establish that his interest in running for Sheriff did not outweigh the defendants rights to have an efficiently running work place. It is

7

important in the law enforcement setting to have trust and loyalty among the workers and plaintiff's actions disrupted that. As a result, plaintiff's speech was not entitled to First Amendment protection.

Assuming plaintiff's interest in expression was greater than Sheriff Pearson's right to restrict such speech, plaintiff then must establish that his political candidacy and speech was a substantial or motivating factor behind the alleged retaliatory employment decision. Maestas v. Segura, 416 F.3d 1182, 1188 (10th Cir. 2005). To satisfy this burden, the plaintiff must first allege the employer took an adverse action against him. It is undisputed, plaintiff was terminated after he announced he was running for Sheriff. Now the plaintiff must demonstrate his protected speech played a substantial part in the employer's decision. Id. at 1188. There must be some evidence linking the employer's action to the employee's speech. Id. at 1189. Although protected speech followed closely by an adverse employment action may justify an inference of retaliatory motive, temporal proximity without more is insufficient to establish retaliatory motive. Id.

Plaintiff contends his candidacy and related speech was a motivating factor behind the alleged adverse employment action. However, the record is insufficient to demonstrate such motivation. Plaintiff announced to the Sheriff in February 2004 that he would be running against him for the position of Sheriff. In March of 2004 the Sheriff announced a schedule change for three deputies. Plaintiff, along with two other deputies had their schedules changed to accommodate the offices' needs. The undisputed evidence reveals the Sheriff changed the schedule so plaintiff could assist in transport and do nursing home

investigations.  Plaintiff testified these were important duties of the Sheriff's office.  Plaintiff was not happy with the schedule change and refused to comply with it. The Sheriff terminated plaintiff for insubordination.  There is absolutely no evidence the termination was linked to plaintiff's decision to run for Sheriff.  The mere fact that the termination occurred after his announcement to run for Sheriff is insufficient to establish a First Amendment violation.  Accordingly, plaintiff cannot establish that his decision to run for Sheriff was a substantial or motivating factor in his termination.

To the extent plaintiff has alleged a claim based upon his right to be able to freely participate in a political association, this claim must also fail.  In Jantzen v. Hawkins, 188 F. 3d 1247, 1252 (10th Cir. 1999) the Tenth Circuit held that deputy sheriff Haughland, who alleged that he had been terminated because of his candidacy against the incumbent sheriff, could not prove his political affiliation claim.  The court observed that "Haughland alleged and testified that the only reason he was fired was because he was a candidate for Sheriff against his own boss." Id. at 1252.  The Tenth Circuit stated "given that the only factor driving Haughland's termination was his candidacy qua candidacy, Haughland has put forth no evidence that he was in any way terminated for political patronage." Id.  The Tenth Circuit also held that "the right to political affiliation does not encompass the mere right to affiliate with ones self," Id. At 1252 In the case at bar, plaintiff is alleging a political association claim based on the fact that he is running against his boss.  Plaintiff has failed to put forth any evidence that he was terminated for his political associations.  Thus, plaintiff has failed to establish that his First Amendment rights were violated as a result of his political affiliation.

9

## II. Property Right

Plaintiff has also alleged a 42 U.S.C. Sec. 1983 claim based on the alleged denial of a property right without due process of law in contravention of the Fourteenth Amendment. Specifically, plaintiff alleges his employer denied him of property without due process by not making contributions to the Oklahoma Public Employees Retirement System and not taking his contributions for the Retirement Fund from his salary. Plaintiff argues that what plaintiff was deprived of is his entitlement to earn years of service credits and contributions into the system. However, the court finds this claim must also fail because plaintiff does not have a constitutionally protected property interest in his retirement benefits or that the contributions be made to the retirement fund.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564,577 (1972) "A property interest must be specific and presently enforceable." Doyle v. Oklahoma Bar Association, 998 F.2d 1559, 1569 (10th Cir. 1993). Property interests are not created by the Constitution, instead, they are created by state law. Roth, 408 U.S. at 577.

Plaintiff contends the defendant denied him of a property interest without due process of law when the defendant allegedly failed to make Muskogee County's and the plaintiff's contributions to the Retirement Fund thereby affecting his future retirement benefit. However, Oklahoma Courts have held that an employee does not have a constitutionally protected interest in a retirement benefit until such time as the employee becomes

eligible for payment of those benefits. <u>Baker v. Oklahoma Firefighters Pension and Retirement System</u>, 718 P.2d 348, 350-53 (Okla. 1968). The law is clear no property interest accrues until the benefit is payable. The Retirement Fund provides that a member is entitled to benefits when he or she has completed eight years of credited service at the date of his termination. It is undisputed plaintiff's employment began on September 15, 1997, and ended on March 17, 2004, a sum of six years, six months and two days. Under the calculations of the system, this amounted to seven years of service. Therefore, plaintiff had seven years of credited services at the date of the termination of his appointment as deputy sheriff. He lacked a year of that required to be vested. Plaintiff has not been employed with a participating employer since his termination so he only has a total of seven years of eligibility. Plaintiff would only be entitled to a retirement benefit if he had 8 years of service, so at this point plaintiff does not have a vested property interest. Therefore, plaintiff does not have a constitutionally protected property interest.

Since plaintiff does not have a vested property interest he is only entitled to the contributions that would have been made to the fund without interest. Plaintiff alleges his contributions were never removed from his paycheck. Plaintiff received the value of his contributions directly in his wages. Thus, plaintiff has not been denied any property interest in this regard. He is in the same position he would have been had he withdrawn his contributions from the Retirement Fund upon his separation of service from the Muskogee County Sheriff's Office.

Plaintiff also argued that his constitutional rights were violated when the county failed to follow their procedures by

failing to enroll him in the retirement system and failing to make his contributions and the County's contributions. Plaintiff is essentially arguing that he has a constitutional right to have the proper process followed. However, failure to follow a policy is not a constitutional issue. The "process is not an end in itself." Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983). The mere expectation of having an action done as part of a process afforded by the state does not create an independent interest protected by the Fourteenth Amendment Due Process Clause in that process. Id. at 250 n. 12. The procedure is designed to protect the substantive interests to which an individual has a legitimate claim of entitlement, but there is no constitutional right to the form of process itself. Id. at 250-52. Further, in a supplement filed with the court on June 27, 2006, the defendants noted that the requisite amount of back contributions have been made to the fund in the name of plaintiff. Thus, plaintiff's retirement account has now been established in his name and has the proper amount of money in it. Finally, plaintiff has been credited with the seven years of service with the county.

Finally, plaintiff has failed to establish the requisite amount of culpable conduct on behalf of the defendant Board of County Commissioners of Muskogee County. Mere negligence is insufficient to establish a constitutional violation. Daniels v. Williams, 474 U.S. 327, 331-332 (1986). Deliberate indifference is the standard needed to establish a constitutional right. City of Canton v. Harris, 489 U.S. 378, 389 (1994). "Deliberate indifference entails something more than mere negligence … [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." The

12

Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." <u>Verdecia v. Adams</u>, 327 F.3d 1171, 1175 (10th Cir. 2003).(internal citations omitted). Plaintiff has failed to establish deliberate indifference on behalf of the defendant Muskogee County Board of County Commissioners. Accordingly, plaintiff's claim for a constitutional violations as a result of a property deprivation must fail.

The defendants' motions for summary judgment are hereby granted.

**IT IS SO ORDERED** this 27th day of June, 2006.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma